## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 05 2015, 8:55 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Hilary Bowe Ricks
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Marques Love,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

February 5, 2015

Court of Appeals Cause No.
49A02-1406-PC-436

Appeal from the Marion Superior Court.
The Honorable Sheila A. Carlisle, Judge.
The Honorable Stanley E. Kroh, Commissioner.
Cause No. 49G03-0611-PC-218901

**Baker, Judge.**

[1] Marques Love appeals the denial of his petition for post-conviction relief. He argues that he received ineffective assistance of counsel because trial counsel did not introduce evidence that Love might have been suffering from post-traumatic stress disorder at the time of the crime. Finding that trial counsel was not ineffective, we affirm.

# Facts

[2] The Facts underlying Love's case are as follows:

> November 14, 2006, Love encountered Scoey Scott at a gas station in Indianapolis, Indiana. Previously, Love and Scott were good friends and lived together, but had a falling out and no longer were friends. Love and Scott argued, and Love got in his vehicle and left the gas station. On his way home, Love realized he forgot some items at the gas station, and returned. Love parked his car near Scott's vehicle. As Love exited his vehicle, he heard a noise and believed that Scott had thrown rocks at Love's vehicle. A physical altercation ensued. At some point, Love drew a gun and shot Scott, who fell to his knees. Love then fired at least two more shots at Scott, and Scott fell all the way to the ground and died before medical help arrived. Love then left the scene, but later returned with his father and was arrested for Scott's murder.
>
> On November 16, 2006, the State charged Love with murder. On December 15, 2006, Love filed a notice of self-defense. Love waived his right to a jury trial, and on October 25 and 26, 2007, the trial court held a bench trial, after which it found Love guilty of murder.

*Love v. State*, No. 49A02-0712-CR-1061, *slip. op.* at p. 2-5 (Ind. Ct. App. June 18, 2008). The trial court imposed a sixty-year sentence.

[3] On June 18, 2008, a panel of this Court affirmed Love's conviction and sentence. *See Love*, No. 49A02-0712-CR-1061, *slip. op.* at p. 2-5. Love filed his first petition for post-conviction relief on September 14, 2009, and he afterwards

filed several amended petitions, the last of which was filed on May 16, 2014. On July 17, 2012, the post-conviction court held a bifurcated hearing. That hearing was concluded on January 15, 2013, and the post-conviction court filed its findings of facts and conclusions of law denying Love post-conviction relief on June 12, 2014. Love now appeals.

## Discussion and Decision

[4] Love argues that the post-conviction court erred in denying his petition for post-conviction relief. Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012). Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 643-44.

[5] Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941

N.E.2d 1091, 1096 (Ind. Ct. App. 2011). We will not reweigh the evidence or judge the credibility of witnesses, and will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id.*

[6] Love contends that his trial counsel was ineffective because he did not introduce evidence that Love might have been suffering from post-traumatic stress disorder at the time of the crime.[1] When reviewing ineffective assistance of counsel claims, we begin with the presumption that counsel rendered adequate legal assistance. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002). To rebut this presumption, the petitioner must demonstrate both that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Many claims of ineffective assistance of counsel can be resolved by a prejudice inquiry alone. *Carr v. State*, 728 N.E.2d 125, 131 (Ind. 2000).

[7] Love, who was shot a few months prior to the commission of his crime, argues that evidence that he was suffering from post-traumatic stress disorder as a

---

[1] In his petition for post-conviction relief, Love also argues that counsel was ineffective for failing to investigate whether Love was competent at the time of trial, but he does not raise this issue in this appeal. In its brief, the State argues that trial counsel could not be deemed ineffective for failing to present an insanity defense. However, Love does not argue that trial counsel should have presented an insanity defense. Rather, he argues that trial counsel should have investigated the possibility that he suffered from post-traumatic stress disorder in order to present evidence of the disorder at trial to bolster the self-defense strategy.

result of that shooting should have been introduced to bolster his self-defense strategy. He argues that the introduction of such evidence would likely have changed the outcome of the case because it would have shown that Love's subjective belief that he needed to use force to protect himself was reasonable. At the post-conviction hearing, trial counsel stated that he was aware that Love had recently been shot. PC Tr. p. 36. However, he testified that he had no reason to be concerned regarding Love's competency and that the issue of Love's sanity was never raised. PC Tr. p. 67-8.

[8] Moreover, trial counsel did present evidence of the traumatic effect of the robbery incident during which Love was shot. He introduced evidence, including medical records, to show that the injuries that Love had sustained from being shot left Love in a weakened condition. Trial counsel also attempted to show that the experience made Love's fear reasonable, which bolstered the claim of self-defense. At closing argument, trial counsel stated:

> The other thing that we need to consider, also, in terms of how
> Marques perceived things and whether he was reasonable or not, was
> the fact that on August -- in August of that year, he was also the victim
> of a crime. And he went through, you know, probably ten or fifteen
> minutes of testimony of the grueling event that occurred, where he was
> suspicious of somebody that came up to the car; he thought there was
> a situation where he might need to protect himself, but he hesitated.
> And when he hesitated, he was shot. And he wasn't able to get any of
> those shots off until afterwards. And you heard about the distress that
> he was in afterwards. And I'm sure that incident played a part in
> Marques' thinking when he was involved in this fight for his life -- at
> the speedway that day.

Tr. p. 418. Therefore, trial counsel did attempt to show that Love had been affected by the shooting in which he was injured and that the shooting might have affected his mental state on the day Love committed his crime.

[9] While it is true that trial counsel did not present evidence regarding post-traumatic stress disorder and did not investigate whether Love might be suffering from the disorder, Love has presented no evidence that he had post-traumatic stress disorder or that his crime was a result of the disorder. Indeed, the only document that Love produced regarding post-traumatic stress disorder is a report from the Social Security Administration that mentions that Love might have possible symptoms of post-traumatic stress disorder. However, the report does not address issues of insanity or incapacity, and it states that Love was "a good historian" and that his "verbalizations are clear, fluent, and relevant." Defendant's Ex. B. Additionally, the report is the result of an evaluation taken on January 2, 2007, after Love had been incarcerated following his shooting of Scott, and there is no way of knowing if possible post-traumatic stress symptoms Love may have been exhibiting might be the result of being shot, of shooting Scott, or of the adjustment to incarceration. *Id.*

[10] We cannot say that Love's trial counsel was ineffective for failing to present evidence of post-traumatic stress disorder resulting from the August incident when Love was shot. Counsel presented evidence regarding the effect the shooting might have had on Love's mental state in regard to self-defense. And trial counsel testified that he had no reason to investigate Love's mental condition, stating that if he had thought a mental evaluation was appropriate,

he would have requested one.  PC Tr. p. 76.  We find that trial counsel was not ineffective.

[11]    The judgment of the post-conviction court is affirmed.

Vaidik, C.J., and Riley, J., concur.